UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.    Case No. 2:16-cv-74
    HON. GORDON J. QUIST

UNKNOWN LEE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging a retaliatory conspiracy and state law violations that occurred while he was incarcerated at Marquette Branch Prison (MBP).  Plaintiff is suing Defendants Timothy Lee, Fred Govern, Patrick Lay, David Makela, Rebecca Horrocks, Brian Durand, and Michael James. Defendants have moved for partial summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies.  (ECF No. 21.)  Plaintiff has responded.  (ECF No. 24.) This matter is now ready for decision.

In his complaint, Plaintiff alleges that he was placed in segregation on February 2, 2015.  Defendant Lee told Plaintiff that he would make sure that Plaintiff's property "gets fucked over" because he filed a complaint against Defendant Makela.  PageID.2.  The next day, Plaintiff received a property receipt.  He noticed that his television and headphones were not on the property receipt.  Plaintiff then filed a grievance.

On March 13, 2015, Plaintiff asked Defendant Govern to investigate where his property was being held.  Defendant refused because of Plaintiff's "reputation."  PageID.3.  On

March 24, 2015, Defendant Lee told Plaintiff that he was not going to get any of his property back unless he dropped the grievance and lawsuit.  Plaintiff refused and asked Defendant Lee to investigate where his property was being held.  Defendant Lee did not investigate.

On April 22, 2015, Defendant Govern told Plaintiff that he could get his property back if he dropped his lawsuit and grievances.  Plaintiff said if he got his property back, he would consider dropping his lawsuit and grievances.  Shortly thereafter, Plaintiff signed a release indicating the terms of the agreement and was told that his television was in cell 21.  Plaintiff proceeded to go to cell 21 to pick up his television, but the occupant refused to give it back.  Plaintiff was then written a misconduct ticket and taken back to segregation.

Plaintiff subsequently tried to show Defendant Lay his property receipt to prove that the television was his property.  Defendant Lay claimed that the serial number from the receipt did not match the property.  Defendant Lay then wrote a Notice of Intent ("NOI") for the television.  Plaintiff claims that Defendant Lay should not have written an NOI because he was declaring that he owned the television and had proof.  Nonetheless, Defendant Lay said, "Don't get political with me, that[']s what got you in this situation." PageID.4.  On April 26, 2015, Corrections Officer Tienen told Plaintiff that the television was going to be destroyed, and Plaintiff filed a grievance on this matter.  On May 3, 2015, Defendant Makela interviewed Plaintiff on his grievance.  Defendant Makela allegedly said, "I know it[']s your t.v., but don[']t even waste your time showing me the receipts. We're getting rid of that motherfucker!" PageID.5.  Plaintiff alleges that Defendant Makela lied when responding to the grievance.

At some point, Plaintiff's television ended up in the possession of Defendant Horrocks.  Plaintiff sent Defendant Horrocks a "formal notice/complaint" asking for his property

back.  Plaintiff also asked Defendant Horrocks for his property back in person on two different occasions.  Defendant Horrocks told plaintiff that he was not getting the television back.

On June 11, 2015, Defendant Durand approached Plaintiff's cell and told him that if he did not write so many complaints that he would tell Defendant Horrocks that the television was his.  Although Plaintiff never received his television back, he was offered a black and white television.  On August 6, 2015, Defendant Horrocks went to Plaintiff's cell to "rub it in Plaintiff's face[.]" PageID.6.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  A moving party without the burden of proof need show only that the opponent

cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532

U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

> PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." Slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Plaintiff filed one grievance related to his allegations in this case—Grievance # MBP-15-04-00711-19Z. Defendants Makela, Horrocks, and Durand argue that Plaintiff did not exhaust his claims against them because they were not named in the grievance. First, as to Defendant Makela, Plaintiff added his name at Step II of the grievance process. Plaintiff alleged that Defendant Makela "intentionally disregarded what the grievance was about" and "refused to view [his] receipts for [his] T.V. and lied to cover it up." PageID.129. Although MDOC policy requires Plaintiff to exhaust his claims at all three Steps of the grievance process, Plaintiff asserts that the grievance coordinator told him to add Defendant Makela in the same grievance. Plaintiff further asserts that if he filed a new grievance, the grievance would be rejected because it would have been related to another grievance. Therefore, in the opinion of the undersigned, Plaintiff has demonstrated that he exhausted all available remedies as to Defendant Makela.

Second, as to Defendant Horrocks, Plaintiff argues that he exhausted his remedies because he included Defendant Horrocks position, "Arus of B-block," in his Step I grievance. However, Plaintiff only included Arus of B-block in the section of the grievance that asks for the grievant to describe how he attempted to resolve the issue before filing the grievance. Plaintiff also added Defendant Horrocks at Step III of the grievance but did not describe any of Defendant Horrocks actions other than her telling Plaintiff that he was going to get his television back. Plaintiff did not allege any facts to establish that Defendant Horrocks was part of the retaliatory conspiracy. In fact, Plaintiff's assertion in the Step III grievance contradicts Plaintiff's allegations in this case—Defendant Horrocks was trying to get Plaintiff's television back for him.

Plaintiff also asserts that he exhausted his remedies against Defendant Horrocks in a different grievance. Plaintiff alleges that he handed this grievance to Correction Officer Hattimer on August 6, 2015. Plaintiff alleges that he never received a response on this grievance. The problem with Plaintiff's argument is that he never attempted to pursue this grievance at Step II or Step III. Pursuant to MDOC policy, a grievant may file a Step II or Step III grievance when he does not receive a timely response. MDOC Policy Directive 03.02.130 (effective July 9, 2007), at ¶¶ BB, FF. Here, Plaintiff did not proceed to Step II or Step III after he failed to receive a timely response to his Step I grievance. Therefore, in the opinion of the undersigned, Defendant Horrocks has met her burden to show that Plaintiff failed to exhaust all available remedies against her.

Third, as to Defendant Durand, Plaintiff added his name at Step III of the grievance process. Similar to Defendant Horrocks, Plaintiff alleged that Defendant Durand told him that he was going to get his television back. Again, Plaintiff did not allege any facts that would establish that Defendant Durand was part of the retaliatory conspiracy. Therefore, in the opinion of the undersigned, Defendant Durand has met his burden to show that Plaintiff failed to exhaust all available remedies against him.

Finally, Defendants argue that Plaintiff failed to exhaust any claims that occurred after April 25, 2015, because April 25, 2015, was the "Date of Incident" on Plaintiff's Step I grievance. However, Plaintiff described events that occurred after April 25, 2015, in his Step II and Step III grievances. Plaintiff again claims that if filed a new grievance alleging the new events, the grievance would have been rejected because it would have been "related" to a previous grievance. Further, Plaintiff states that his Step II and Step III grievances were never rejected based on a procedural rule. Plaintiff is correct. Defendants never rejected the grievances because Plaintiff added events that occurred after the original date of incident. Moreover, Defendant cannot

attempt to enforce a procedural rule that was never relied on to reject the grievance. See *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010). Therefore, in the opinion of the undersigned, Defendants have failed to show that Plaintiff did not exhaust his remedies to the alleged events occurring after April 25, 2015.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 21) be granted in part and denied in part. Plaintiff exhausted his available administrative remedies against Defendants Lee, Govern, Lay, James, and Makela. However, Plaintiff failed to exhaust his claims against Defendants Horrocks and Durand. Therefore, Defendants Horrocks and Durand should be dismissed from this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  April 19, 2017

                                                 /s/ Timothy P. Greeley  
                                                 TIMOTHY P. GREELEY  
                                                 UNITED STATES MAGISTRATE JUDGE